**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THAWNG CEM MAN and LINN LAT THAW, | ) ) No. 2:22-00103 |
| Plaintiffs, | ) ) ) ) |
| v. | ) Judge Robert J. Colville ) ) |
| LEVI SAP NEI THANG, CHARLES MANGLIAN SUNTHAN, LEVI SAP NEI THANG, LLC, LEVI SAP NEI THANG, LLC, I AM A DREAMER, LLC, LEVI SAP NEI THANG, LLC, LEVI SAP NEI THANG HOLDING COMPANY, LLC, and LEVI SAP NEI THANG, LLC, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

      Before the Court is a Motion to Dismiss (ECF No. 10) filed by Defendants in this matter. Defendants move to dismiss all counts in Plaintiff's Complaint (ECF No. 1), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. The Court has subject matter jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). The Motion has been fully briefed and is ripe for disposition.

**I.    Factual Background & Procedural History**

      In the Complaint, Plaintiffs sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

      Plaintiffs are a married couple, both chefs by trade. ECF No. 1 ⁋ 19. In June 2020, Defendants approached Plaintiffs with a business venture, wherein Plaintiffs' capital would be

used to secure Oil & Gas leases.  As represented by Defendants, their access to federal Oil & Gas leases, at pennies on the dollar, would allow Defendants to transfer these leases to Plaintiffs at low rates to resell at a large markup.  *Id.* ¶ 24.  On these representations, Plaintiffs were interested in working with Defendants, and in June 2020, intending to secure a particular lease in Wyoming, Plaintiffs wired to Defendants $10,000.  *Id.* ¶ 30.

The next month, in July 2020, Plaintiffs approached Defendants with two additional lease acquisition proposals, one in Texas and one in New Mexico.  *Id.* ¶ 31.  With reliance on Defendants' representations, Plaintiffs wired $85,000 to Defendants for the two leases.  *Id.* ¶ 32. Later that month, Defendants contacted Plaintiffs to inform them that they had not secured the Wyoming Lease bid.  In August 2020, Defendants sent Plaintiffs a Purchase & Sale Agreement assigning to them the rights to a lease in North Dakota for the price of $10,000, which Defendants said was the replacement for the lost bid in Wyoming.  *Id.* ¶ 34.

Later that month, Defendants contacted Plaintiffs to tell them that they had not secured the Texas lease either.  Plaintiffs then informed Defendants that they had reservations about their investment and expressed interest in withdrawing their $85,000 investment.  *Id.* ¶ 35.  During the phone call, Plaintiffs did not yet demand that the investment be refunded, but asked for more time to consider whether to withdraw from the ventures.  *Id.*  In the meantime, Plaintiffs executed the North Dakota lease Purchase & Sale Agreement and paperwork.  *Id.* ¶ 38.

In September 2020, Defendants asked Plaintiffs to travel to New Mexico to meet with one of Defendants and visit the proposed New Mexico lease location, which Plaintiffs did.  *Id.* ¶¶ 39– 40.  At the meeting, Plaintiffs learned that the original New Mexico lease was no longer available, and that a new one could be procured for a $150,000 investment.  *Id.* ¶ 41.  After Plaintiffs declined the offer, Defendants offered another location that was available for $80,000.  Plaintiffs expressed

interest but made no commitment.  During the trip to New Mexico, Plaintiffs were unable to visit lease site locations.  *Id.* ¶ 42.

Later that month, Plaintiffs received confirmation of their North Dakota lease acquisition, only to find that their investment had gone to a lease other than the one described in their Purchase & Sale Agreement.  *Id.* ¶ 43.  Despite reaching out to Defendants for an explanation, Plaintiffs never received any information as to how the discrepancy occurred.  *Id.*

Defendants then contacted Plaintiff inquiring about a decision regarding the $80,000 lease purchase in New Mexico.  On September 24, 2020, Plaintiffs contacted Defendants with an answer, explaining that due to financial difficulties and a family member's medical expenses, they did not want to move forward with another purchase and would instead like their $85,000 investment returned.  *Id.* ¶ 45.  Defendants said they would be in touch with details.  *Id.*

In October 2020, Defendants responded that they would return $25,000 and that the remaining $60,000 would go toward the New Mexico lease purchase.  *Id.* ¶ 46.  Plaintiffs executed an agreement on this lease purchase.  *Id.*  In December 2020, Plaintiffs contacted Defendants respecting the status of the $25,000 return they were expecting, and Defendants informed them that funds were low and they could immediately send just $10,000.  *Id.* ¶¶ 47–48.  A few days later, Plaintiffs received the $10,000, and in March 2021, they received the remaining $15,000. *Id.* ¶¶ 49–50.

Plaintiffs later learned that the New Mexico lease, which Defendants had represented had been acquired at government auction for $150,000, had been purchased by Defendants for just over $10,000. *Id.* ¶ 51.  The North Dakota lease, which Defendants represented had been acquired for $10,000, had in fact been purchased for just over $700.  *Id.* ¶ 52.  Plaintiffs confronted

Defendants about these discrepancies and asked for all remaining funds to be returned. *Id.* ¶ 53. Defendants did not reply to these or any further requests from Plaintiffs. *Id.* ¶ 54.

Plaintiffs bring a claim for federal RICO under 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d), Fraud in the Inducement, Fraud in the Execution, Intentional Misrepresentation, Negligent Misrepresentation, and Unjust Enrichment, and asks the Court to enter a Declaratory Judgment or Recission respecting the Purchase and Sale Agreements between the parties. On March 28, 2022, Defendants filed a Motion to Dismiss, along with a Brief in Support (ECF No. 11). On April 11, 2022, Plaintiff filed a Reply Brief (ECF No. 12).

## II.    Legal Standard

### A.  Failure to State a Claim

Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when

4

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing

the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d

780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they
> are no more than conclusions, are not entitled to the assumption of truth." *Id.* at
> 679; *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)
> ("Mere restatements of the elements of a claim are not entitled to the assumption of
> truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-
> pleaded factual allegations, [the] court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556
> U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters

of public record, orders, exhibits attached to the complaint and items appearing in the record of

the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

When a document integral to or relied upon in the complaint is included, the court may also

consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

## III.    Discussion

### A.  Counts I, II, & III - 18 U.S.C. § 1962(a), (c), and (d) – RICO and RICO Conspiracy

Under the RICO Act, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). *See Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816–817 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Under 18 U.S.C. § 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly," from a violation of § 1962(c). And under 18 U.S.C. § 1962(d), "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) . . . or (c) of this section." Therefore, to succeed in a cause of action for any of these RICO Act violations, a plaintiff must establish that the defendant is (1) a person (2) who is associated with an enterprise engaged in interstate commerce (3) who conducted the affairs of said enterprise (4) through a pattern (5) of racketeering activity.

Plaintiffs argues that these requirements are met: (1) Defendants are "persons," in that each holds "a legal or beneficial interest in property," ECF No. 1 ⁋ 58, (2) associated with each other for the purpose of these ventures, forming an association-in-fact enterprise, *Id.* ⁋ 66, (3) who conduct the affairs of the association-in-fact enterprise, *Id.* ⁋ 68, (4) and who engaged in multiple actions against Plaintiffs that amount to a pattern, *Id.* ⁋ 60–62, (5) of racketeering activity, *Id*.

Defendants argue that the RICO Act elements are not met, because Plaintiffs do not properly allege the existence of both a "person" and an "enterprise" as separate entities. ECF No. 11 at 9–10.

Each of Defendants is a "person" under the RICO Act meaning, in that each is a natural person. *See generally Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). Further, the Complaint assigns them a role in facilitating the frauds alleged.

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While "it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity," a plaintiff must show "that [the enterprise] has an existence beyond that which is necessary merely to commit each of the acts [that] predicate racketeering offenses." *United States v. Console*, 13 F.3d 641 (3d Cir. 1993). In other words, "a plaintiff must demonstrate the existence of an 'enterprise,' functioning as an independent, free-standing association-in-fact, which 'engages in a pattern of activity which differs from the usual and daily activities of its members.'" *Ferguson v. Moeller*, No. 2:16-CV-41, 2016 WL 1106609 (W.D. Pa. Mar. 22, 2016) (quoting *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006)). In short, a collective is an "enterprise" for RICO Act purposes if it has "functions other than the perpetration of the predicate racketeering acts." *Id. See also Smith v. Jones, Gregg,*

*Creehan & Gerace, LLP,* No. 2:08-CV-365, 2008 WL 5129916 (W.D. Pa. Dec. 5, 2008); *Wood v. Wood*, No. CV 16-995, 2017 WL 57186 (W.D. Pa. Jan. 5, 2017); *Kingfly Spirits, LLC v. Ragghianti*, No. CV 22-50E, 2023 WL 6214262 (W.D. Pa. Sept. 25, 2023).

The RICO Act requires the "person" and the "enterprise" to be distinct. The enterprise cannot simply be "the same 'person' referred to by a different name." *Cedric Kushner*, 533 U.S. at 158. In other words, if a defendant were regularly engaging in racketeering, that alone could make her a person engaging in crimes, but not necessarily a person associated with an enterprise. In such an instance, a plaintiff cannot simply identify the defendant as both a person and an enterprise for RICO Act purposes, even if this hypothetical defendant does own, operate, and function as the sole employee of a legally recognized business enterprise. "[A] natural person . . . is distinct from [a] corporation, . . . a legally different entity with different rights and responsibilities due to its different legal status." *Id*. at 163. Identifying "persons" as also operators within an "enterprise," as opposed to simply standalone actors, can be complex, but is simplest when a person is or persons are corrupting an otherwise legitimate enterprise or using the front of an enterprise to lend legitimacy to dishonest activities. In *Cedric Kushner*, Justice Breyer, writing for a unanimous Supreme Court, outlines the fundamental purpose of the RICO Act. "RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful activity is committed.'" *Id*. at 164 (citing *United States v. Turkette*, 452 U.S. 576, 591 (1981), *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994)) (cleaned up).

In the instant case, the Court is not convinced that, as described in the Complaint, there exists an "enterprise," which must have a broader function than to simply defraud Plaintiffs. Here,

Plaintiffs do not provide facts to support an inference that there exists a broader criminal, or other intended, enterprise that they happened to fall victim to. The claim that Plaintiffs "believe that Defendants intentionally prey on naïve investors" is the sort of information the Court may be inclined to consider, with other allegations of facts, in determining the existence of an enterprise or the infiltration thereof. ECF No. 1 ¶ 55. However, the bare conclusion is simply not enough to reach such an inference. Without some establishing historical claims, the Court cannot conclude two of the most fundamental characteristics of a RICO, namely, that a defendant has corrupted the legitimacy of an enterprise and poses an ongoing criminal threat. "[T]he ambit of RICO may encompass a 'legitimate' businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts . . . as a means of accomplishing his scheme." *Ferguson v. Moeller*, 2016 WL 1106609 (W.D. Pa. Mar. 22, 2016). "The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, n.14 (1985) (quoting S.Rep. No. 91–617, p. 158 (1969)). What is needed is a showing "that the racketeering predicates pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). In other words, the facts alleged must signal that the defendant poses on ongoing and future threat, or what the Supreme Court terms "continuity."

Accepting all the well-pled facts in the Complaint in a light most favorable to Plaintiffs, as the Court reads it, Plaintiffs argue that Defendants came together to defraud Plaintiffs, misdeeds that should more properly be adjudicated in a state court. Plaintiffs claim to believe that Defendants engage in a broader pattern of criminal or other intended behaviors that go beyond this singular fraud. On the assumption that Plaintiffs may be able to support this contention with

additional well-pled facts, the Court does not find the RICO Act arguments to be hopelessly futile. Nevertheless, as currently pled, the Complaint does not state plausible RICO Act claims under § 1962(a) or (c) (and, by extension, RICO Act conspiracy under § 1962(d)).

### B.  The Remaining Counts

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C.A. § 1367(a).  A district court may, however, decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3).  In deciding whether to decline to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because the RICO Act claims were the sole jurisdictional basis that brought this action to this District, the Court finds it premature to make any findings related to the remaining state claims without the presence of a federal question before the Court.  The factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court declining to exercise supplemental jurisdiction without conviction that there is a claim respecting federal law to which the remaining state claims are ancillary.  Accordingly, if an amended complaint does not present a credible federal question, the Court will be inclined to dismiss the remaining state law claims without prejudice to allow Plaintiffs to pursue the same in state court.  Pending any such

amendment, the court declines to exercise supplemental jurisdiction over the state claims at this time.

**IV.    Conclusion**

For the reasons discussed above, as to Counts I, II and III, the Court will grant Defendants' Motions to Dismiss.  Plaintiff's RICO Act claims will be dismissed without prejudice, and the Court will grant Plaintiffs leave to amend their complaint within 21 days of the date of this Memorandum.  An appropriate Order of Court follows.

BY THE COURT:


*/s/Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: March 28, 2025

cc: All counsel of record,