**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THAWNG CEM MAN and LINN LAT THAW, | ) | No. 2:22-00103 |
| Plaintiffs, | ) | |
| | ) | Judge Robert J. Colville |
| v. | ) | |
| LEVI SAP NEI THANG, CHARLES MANGLIAN SUNTHANG, LEVI SAP NEI THANG, LLC, LEVI SAP NEI THANG, LLC, I AM A DREAMER, LLC, LEVI SAP NEI THANG, LLC, LEVI SAP NEI THANG HOLDING COMPANY, LLC, and LEVI SAP NEI THANG, LLC, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 42) filed by Defendants in this matter. Defendants Levi Sap Nei Thang ("Defendant Thang"), Charles Manglian Sunthang ("Defendant Sunthang" and, together with Defendant Thang, "Individual Defendants"), Levi Sap Nei Thang, LLC, a New Mexico Limited Liability Company, Levi Sap Nei Thang, LLC, a Wyoming Limited Liability Company, and Levi Sap Nei Thang Holding Company, LLC, a Wyoming Limited Liability Company ("Corporate Defendants" and, together with Individual Defendants, "Defendants")[1] move to dismiss all counts in the Amended Supplemental Amended Complaint (the "Complaint," ECF No. 40) filed by Plaintiffs Thawng Cem Man and Linn Lat Thaw

[1] Defendants I Am a Dreamer, LLC, Levi Sap Nei Thang, LLC of Colorado, and Levi Sap Nei Thang, LLC of California have not joined this Motion. Moving Defendants assert that non-moving Defendants have dissolved. Nothing in this opinion resolves any claims against non-moving Defendants.

("Plaintiffs"), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. The Court has subject matter jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). The Motion has been fully briefed and is ripe for disposition.

**I. Factual Background & Procedural History**

In the Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

Plaintiffs are a married couple of Burmese nationality. ECF No. 40 ¶ 24. Defendant Levi Sap Nei Thang ("Defendant Thang"), a Burmese celebrity, used social media to promote to the Burmese-speaking online community a network of corporate entities as bona fide oil and gas industry experts. *Id.* ¶ ¶ 26–34. In June 2020, Defendant Thang represented in social media posts targeted at Burmese speakers that she and her team had extensive experience in the oil and gas industry and had valuable oil and gas leases available for sale. *Id.* ¶ 37. Defendants further represented that once they had facilitated a purchase for a customer at auction, Defendants would facilitate the development of oil and gas production, which would ultimately produce thousands of barrels of oil per day. *Id.* ¶ ¶ 40–44. In actual fact, Defendants purchased these leases at government auction for far less than their claimed worth and purchase price. They then represented to members of the Burmese immigrant community that the leases were purchased for well above the auction price and that customers would receive the leases at their winning bid price with no markup. *Id.* ¶ ¶ 38–39.

Based on these representations, Plaintiffs entered into agreements with Defendants to acquire the mineral and oil rights to several allegedly valuable oil and gas leases. *Id.* ¶ 49. In June 2020, intending to secure a particular lease in Wyoming (the "Wyoming Lease"), Plaintiffs wired to Defendants $10,000. *Id.* ¶ 50. The next month, in July 2020, Plaintiffs approached

Defendants with an additional lease acquisition proposal in Texas (the "Texas Lease"). *Id.* ¶ 51. With reliance on Defendants' representations, Plaintiffs wired $85,000 to Defendants for the Texas Lease. *Id.* ¶ 52.

Later that month, Defendants contacted Plaintiffs to inform them that they had not secured the Wyoming Lease bid, and that Plaintiffs would instead receive a lease of greater value that Defendants already owned. *Id.* ¶ 53. In August 2020, Defendants sent Plaintiffs a purchase and sale agreement assigning to them the rights to a lease in North Dakota (the "North Dakota Lease") for the price of $10,000, which Defendants said was the replacement for the lost bid on the Wyoming Lease. *Id.* ¶ 54.

Later that month, Defendants contacted Plaintiffs to tell them that they had not secured the Texas Lease either. Plaintiffs then informed Defendants that they did not want to purchase a replacement lease with their $85,000 investment and instead wanted the funds returned. *Id.* ¶ 55. Defendants then informed Plaintiff that Defendants had purchased a lease in New Mexico (the "New Mexico Lease") with a winning bid and market value of $100,000, which thy would provide to Plaintiffs for their $85,000 investment initially intended for the Texas Lease. *Id.* ¶ 56. Plaintiffs declined the offer and requested time to consider their options on their $85,000 investment. *Id.* ¶ 57. In the meantime, Plaintiffs executed the North Dakota Lease purchase and sale agreement and paperwork. *Id.* ¶ 58. At the same time, Plaintiffs requested the return of their $85,000 investment. *Id.*

In September 2020, Defendants asked Plaintiffs to travel to New Mexico to meet with Charles Manglian Sunthang ("Defendant Sunthang") and visit the proposed New Mexico Lease location. *Id.* ¶ 59. Defendants also solicited information from Plaintiffs for the formation of a limited liability company in Plaintiffs' names for the purpose of obtaining a second lease

agreement from Defendants. *Id.* ¶ 60. Defendants formed Linnstar, LLC in Plaintiffs' names. *Id.* ¶ 61. Plaintiffs ultimately traveled to New Mexico to meet with Defendant Thang and Defendant Sunthang. *Id.* ¶ 62. At the meeting, Plaintiffs learned that the original New Mexico Lease was no longer available, and that a new one that Defendants had purchased for $120,000 could be purchased with Plaintiffs' $85,000 investment. *Id*. After Plaintiffs declined the offer, Defendants offered another location in New Mexico that was available for $80,000 (the "Second New Mexico Lease"). Plaintiffs expressed interest but made no commitment. *Id.* ¶ 63. During the trip to New Mexico, Plaintiffs were unable to visit lease site locations. *Id*.

Later that month, Plaintiffs received confirmation of their North Dakota Lease acquisition, only to find that their investment had gone to a lease other than the one described in their purchase and sale agreement. *Id.* ¶ 67. Defendants then contacted Plaintiff inquiring about a decision regarding the $80,000 for the Second New Mexico Lease. *Id.* ¶ 69. On September 24, 2020, Plaintiffs contacted Defendants with an answer, explaining that due to financial difficulties and a family member's medical expenses, they did not want to move forward with another purchase and would instead like their $85,000 investment returned. *Id.* ¶ 70. Defendants said they would be in touch with details. *Id.* In October 2020, Defendants responded that they would return $25,000 and offered to direct the remaining $60,000 toward another New Mexico lease purchase. *Id.* ¶ 71. In December 2020, Plaintiffs received $10,000, and in March 2021, they received the remaining $15,000. *Id.* ¶ ¶ 72–74.

Plaintiffs later learned that the New Mexico Lease, which Defendants had represented had been acquired at government auction for $150,000, had been purchased by Defendants for just over $10,000. *Id.* ¶ 76. The North Dakota lease, which Defendants represented had been acquired for $10,000, had in fact been purchased for a little over $700. *Id.* ¶ 75. Plaintiffs

confronted Defendants about these discrepancies and asked for all remaining funds to be returned. *Id.* ¶ 77. Defendants did not reply to these or any further requests for clarification from Plaintiffs. *Id.* ¶ 78.

On January 18, 2022, Plaintiffs filed this lawsuit, bringing claims for RICO under 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d), Fraud in the Inducement, Fraud in the Execution, Intentional Misrepresentation, Negligent Misrepresentation, Breach of Written, Oral and Implied Contract, and Unjust Enrichment, and asks the Court to provide Permanent Injunctive Relief and enter a Declaratory Judgment or Recission respecting the purchase and sale agreements between the parties. On March 28, 2022, Defendants filed a Motion to Dismiss (ECF No. 10). On March 28, 2025, the Court granted Defendants' Motion to Dismiss without prejudice. ECF No. 20.

In June 2025, after Plaintiffs filed this suit and the Court granted the first Motion to Dismiss without prejudice, Defendant Thang posted information about Plaintiffs and this case to social media. *Id.* ⁋ 91. These posts include photos of Plaintiffs, disparaging remarks about Plaintiffs, calls for followers to contact Plaintiffs, and claims that this Court dismissed the case against Defendants. *Id.* ⁋ 91–92.

On November 10, 2025, Plaintiffs filed the Amended Supplemental Amended Complaint (ECF No. 40), which included the original claims and an additional claim for Defamation. On December 1, 2025, Defendants filed the present Motion to Dismiss, along with a Brief in Support (ECF No. 43). On December 23, 2025, Plaintiff filed a Reply Brief (ECF No. 44).

## II. Legal Standard

### A. Failure to State a Claim

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

## III. Discussion

### A. Count I – 18 U.S.C. § 1962(a)

Defendants move to dismiss the Section 1962(a) claim, arguing, *inter alia*, that Plaintiffs have not alleged facts showing that they were injured as a result of the use or investment of income derived from racketeering activity. Plaintiffs respond that their transfer of funds to Defendants is the underlying racketeering activity, and the investment of those funds into low-value properties is the additional injury caused by the investments of income that came from racketeering activity.

Under 18 U.S.C. § 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Only a Plaintiff "injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c) (emphasis added). As such, to state a claim under Section 1962(a), a plaintiff must show that he was injured, not merely by fraudulent activity prohibited in Section 1962 broadly or elsewhere, but by the use or investment of income received through a pattern of racketeering activity, as described in Section 1962(a). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) ("[A] plaintiff must allege injury specifically from the use or investment of income in the named enterprise.") (citing *Rose v. Bartle*, 871 F.2d 331, 357–58 (3d Cir. 1989)).

Here, the only injury alleged is the loss of (some of) the funds wired ostensibly for the procurement of valuable leases. While the Complaint alleges that Plaintiffs wired the funds

while under misimpressions designed by a racket and that those funds were later invested into less valuable properties, these two events constitute the same injury in the same amount. Importantly, the Complaint does not allege that Plaintiffs' wired funds were somehow invested to cause them further or separate injury. In short, when Plaintiffs received the low-value leases in exchange for the wired funds, the injury was not a downstream use of the proceeds that further harmed Plaintiffs. Had the leases been of the value Plaintiffs expected, there would be no injury to allege. The racketeering activity is the exchange of low-value leases for large sums of money. The receipt of the low-value leases consummated the fraud, causing Plaintiffs' injury. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993) ("[T]he fact that a plaintiff claims that the injury allegedly perpetrated on it would not have occurred without the investment of funds from the initial racketeering activity does not change the fact the plaintiff's alleged injury stems from the pattern of racketeering, and not from the investment of funds by the defendant.").

Accordingly, the Court finds that Plaintiffs have failed to allege facts showing "that they were injured as a result of the use or investment of income derived from racketeering activity." 18 U.S.C. § 1962(a). As such, as to the Section 1962(a) claim, the Court will grant the Motion.

**B. Count II - 18 U.S.C. § 1962(b)**

Defendants move to dismiss the Section 1962(b) claim, arguing that Plaintiffs have failed to allege facts showing that they were injured by Defendants' interest or control of an enterprise engaged in racketeering activity. Plaintiffs respond that "it was Defendants' investment of the funds fraudulently obtained from Plaintiffs in the Thang Enterprise that deprived Plaintiffs the return of their life savings, facilitated the gained control of seemingly legitimate business

resources[, and] used alike legitimate business store fronts to hide criminal enterprises." ECF No. 44 at 17.

Under 18 U.S.C. § 1962(b), it is "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To state a claim under Section 1962(b), "a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity." *Kehr Packages*, 926 F.2d at 1411 (citing *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 n. 2 (3d Cir. 1989)). As the Court discussed *supra* respecting Section 1962(a), proper pleading under Section 1962(b) also "requires the assertion of an injury independent from that caused by the pattern of racketeering." *Lightning Lube*, 4 F.3d at 1191; *see also Laurel Gardens LLC v. McKenna*, No. 23-2649, 2024 WL 3220401, at *2 (3d Cir. June 28, 2024) ("[T]he harm forbidden by subsection (b) must result from the acquisition of control of or an interest in an enterprise, and not merely from the predicate racketeering acts that are aimed at the acquisition.").

Frankly, the Court does not quite understand how Plaintiffs' Reply, as to this claim, is responsive to Defendants' argument or material to the central legal issue. The problem for Plaintiffs is that, as was the case for the plaintiff in *Lightning Lube*, they allege that Defendants maintain an interest in an enterprise through which they engaged in the underlying racketeering activity that harmed Plaintiffs, without alleging an additional injury from the control of the enterprise. *Id.* (finding that alleging the same injury as the underlying racketeering to support a claim under Section 1962(b) "fails to explain what additional injury resulted from the person's interest or control of the enterprise."). *Lightning Lube* explains more fully the purpose of Section 1962(b) as compared to other subsections of the RICO statute. An injury under Section

1962(b) "may be shown . . . where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Id.* at 1190. In fact, by the Court's reading of the statute, Congress included this provision to protect injuries to the enterprise itself, granting a remedy where ownership and control of the enterprise is wrested away through racketeering. Section 1962(b) is not meant to protect against downstream harm caused by a defendant's activities once it acquires control of the enterprise.

Accordingly, the Court finds that Plaintiffs have failed to allege facts showing that they were injured by Defendants acquiring or maintaining control of any enterprise through racketeering activity. As such, as to the Section 1962(b) claim, the Court will grant the Motion.

**C. Count III – 18 U.S.C. § 1962(c)**

Defendants move to dismiss the Section 1962(c) claim, arguing that Plaintiffs have failed to allege facts showing that there is a "person" distinct from the "enterprise." Plaintiffs appear to respond that this distinction is properly alleged because the individual Defendants are the persons, and the collection of Defendants constitute an association-in-fact enterprise. ECF No. 44 at 19–20. Defendant also raises an issue respecting the particularity requirement under Federal Rule of Civil Procedure 9(b). However, the "person" and "enterprise" distinction issue will resolve this claim, and so in the interest of judicial economy, the Court will not address Rule 9(b).

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Broken down into elements, this means that to succeed in a

cause of action under Section 1962(c), a plaintiff must establish that the defendant is (1) a person (2) who is associated with an enterprise engaged in interstate commerce (3) and who conducted the affairs of said enterprise (4) through a pattern (5) of racketeering activity. A "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Section 1962(c) requires that the "person" be distinct from the "enterprise" through which the person conducts racketeering activity. This distinctiveness principle is evident from the statute itself, which states that "the 'person' must be employed by or associated with an 'enterprise.'" *B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628, 633 (3d Cir. 1984). The *Enrich* court continued, "The Enright Refining Company, Inc. clearly is not employed by the Enright Refining Company, Inc.; nor is it logical to say that the Enright Refining Company, Inc. is associated with the Enright Refining Company, Inc. Thus, the language contemplates that the 'person' must be associated with a separate 'enterprise' before there can be RICO liability on the part of the 'person.'" *B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628, 633 (3d Cir. 1984). This established this Circuit's so-called *Enright* rule. *Enright*, however, only developed the most straightforward version of the distinction, where the person and enterprise were the same entity. There, the Third Circuit Court found that the two were not distinct for Section 1962(c) purposes. *Id.* Since then, the Court of Appeals has refined its formulation of distinctiveness. In *Brittingham v. Mobil Corp.*, the Third Circuit Court explained:

> [A] § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an

> "association" of these individuals or entities. Consequently, the *Enright* rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf. The distinctiveness requirement ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted. Therefore, we must examine the enterprise allegation to determine whether it is no more than an association of individuals or entities acting on behalf of a defendant corporation. Our decision is in accord with numerous courts that have rejected attempts to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation.

*Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991). In *Glessner v. Kenny*, the Third Circuit Court found that because the corporate entity defendants "had no separate active roles in the alleged racketeering activity apart from the actions of their agents and affiliates that also comprise part of plaintiffs' alleged 'association in fact,'" the plaintiffs had failed to meet Section 1962(c)'s distinctiveness requirement. *Glessner v. Kenny*, 952 F.2d 702, 713 (3d Cir. 1991). *Glessner* also addressed the reverse possibility, whether a natural person within a corporate entity can be the "person" conducting the racketeering through corporations, which together serve as the "enterprise." *Id.* The court found that "section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third parties." *Id.* (quoting *Petro-Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349, 1359 (3d Cir. 1987)). In that case "[a]ll of the defendants held positions as officers and principals of the corporate defendants, and received income as such. All of the defendants derived income from each and every sale of the 'blue flame' products. These sales were generated by defendants' multiple mail fraud violations which combined into a pattern of racketeering." *Id.* (internal

citation omitted). This was "a far cry from the use by individuals of an innocent passive corporation." *Id.* at 714.

The *Jaguar v. Royal Oaks*, the Third Circuit Court developed this further. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995). That case involved allegations that employees of a car dealership, under the direction of its officers, submitted fraudulent warranty claims. The Court of Appeals found that the officers who owned and managed the dealership were "persons" distinct from the dealership "enterprise," because a "corporation is an entity legally distinct from its officers or employees, which satisfies the 'enterprise' definition." *Id.* at 267. The United States Supreme Court reached largely the same conclusion in *Cedric Kushner v. King*. In *Cedric Kushner*, the plaintiff sued rival boxing promoter Don King and Don King Productions, Inc., alleging that King (as the "person") had used Don King Productions (as the "enterprise") to engage in a pattern of racketeering to interfere with the plaintiff's contracts with clients. The Supreme Court, in a unanimous decision, reversed the district court's and appellate court's decisions to dismiss the case, explaining that a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

*Jaguar* and *Cedric Kushner* are informative (and indeed binding on this Court), but nevertheless quite distinct from the case at bar. Both of those cases involved operational corporate entities that function independent of any alleged racketeering activity. Neither case had any occasion to address the question of whether a corporation that was seemingly formed for the purpose of performing the predicate acts alleged in the complaint can be said to have an independent existence that renders it distinct from the actions of its officer. In both cases, it was clear that the corporate entities were, aside from the racketeering alleged, otherwise functional

entities with clients, customers, and services. In fact, the Supreme Court underscored the narrowness of its decision, and the Court here adheres to that guidance. *Cedric Kushner*, 533 U.S. at 164 ("We do not here consider the merits of [significantly different allegations compared with the instant case], and note only their distinction from the instant case.").

Here, as alleged, the enterprise is not, and does not include, a real and operational corporate entity with functions other than the predicate acts of racketeering. Unlike in *Jaguar* and *Cedric Kushner*, the Corporate Defendants here are not alleged to have any business operations other than the kinds of frauds the Complaint describes. In fact, the opposite is true. The allegations specifically foreclose treating Corporate Defendants as anything other than extensions of Defendant Thang. Plaintiffs allege, on information and belief, that Corporate Defendants are "mere shell or sham entities without capital assets, stock or stockholders," that Corporate Defendants are used by Individual Defendants "as a device to avoid individual liability," that Corporate Defendants "were so inadequately capitalized that their capitalization was illusory or trifling," and that Individual Defendants used Corporate Defendants' assets "for their personal use." Each Corporate Defendant, moreover, is alleged to be served through the same individual, Defendant Thang, who is named as the manager and officer of all the entities.

With the facts alleged here, the Court finds that the *Enright* rule still controls. If these allegations do not destroy the lines of distinctness, then the distinctness requirement is permanently eviscerated. This Court is not prepared to extend *Cedric Kushner* beyond its fact pattern, which would overlook its guidance about its own narrow application, to completely wipe out decades of Third Circuit precedent.

Moreover, since *Cedric Kushner*, the facts alleged in this case, along with the theories of personhood and enterprise as are alleged here, have repeatedly been dismissed by courts in this

Circuit. When describing their theory of personhood, Plaintiffs assert that "[e]ach Defendant, at all relevant times, is and has been a 'person' within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, 'a legal or beneficial interest in property.'" ECF No. 40 at 21. As to their theory of enterprise, Plaintiffs assert that "Defendants, consisting of both individuals, namely Levi Sap Nei Thang and Charles Manglian Sunthang, as well as legal entities, specifically the entity Defendants, collectively constitute an enterprise within the meaning of 18 U.S.C. § 1961(4), as all were associated with one another for the common purpose. . . ." *Id.* Reviewing the "Parties" section of the Complaint as well as the case caption and docket, it appears that each Defendant in this matter serves as both a person and a member of the enterprise. However, several courts within this Circuit have dismissed cases alleging virtually identical facts and have been affirmed by the Third Circuit Court. "If the members of the enterprise are the same as the persons, the distinctness requirement has not been met, as the 'person' and the 'enterprise' must not be identical." *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 383 (D.N.J. 2006), *aff'd*, 691 F.3d 527 (3d Cir. 2012). "While [the plaintiff] properly alleges that each [defendant] is a RICO person and the [defendants] form an enterprise, or a de facto association engaged in a common pursuit, [the plaintiff] has failed to meet § 1962(c)'s distinctiveness requirement because [the plaintiff's] RICO persons and alleged RICO enterprise are one and the same." *Kolar v. Preferred Real Est. Invs., Inc.*, No. CIV.A. 07-3864, 2008 WL 2552860 (E.D. Pa. June 19, 2008), *aff'd*, 361 F. App'x 354 (3d Cir. 2010).

Accordingly, the Court finds that Plaintiffs have failed to allege facts showing that the "persons" and "enterprise" allegedly engaged in racketeering activity are sufficiently distinct. As such, as to the Section 1962(c) claim, the Court will grant the Motion.

**D. Count IV – 18 U.S.C. § 1962(d)**

Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." Because Section 1962(d) is merely an extension of the underlying violations of RICO, Plaintiffs' failure to state a claim for 1962(a), (b), or (c) means that any theory that Defendants conspired to violate them fails, as well. *Lightning Lube*, 4 F.3d at 1191 ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

Accordingly, the Court finds that Plaintiffs have failed to allege facts showing a RICO conspiracy. As such, as to the Section 1962(d) claim, the Court will grant the Motion.

**E. Count V – Fraud in the Inducement**

Defendants move to dismiss the Fraud in the Inducement claim, arguing that it is barred by the integration clauses in the written purchase and sale agreement, and that it does not plead fraud with the requisite particularity that Rule 9(b) requires as to each Defendant. Plaintiffs respond that the purchase and sale agreement was not executed and that their allegations name the specific acts by the specific Defendants.

Under Pennsylvania law, for a plaintiff to state a fraud in the inducement claim, he must show that representations made before the contract was executed induced the plaintiff to enter into the contract he otherwise would not have entered into. *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Props., Inc.*, 439 Pa. Super. 141, 148–49 (1995) ("[A] party may introduce evidence of factual misrepresentations allegedly made prior to execution of a written agreement if the party alleges that he was induced to enter the agreement by the misrepresentations provided."). Where the subject of those representations is addressed in an

integrated written agreement, "under the parol evidence rule [the plaintiff must] aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract." HCB Contractors v. Liberty Place Hotel Assocs., 539 Pa. 395, 398 (1995). "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that," and a claim of fraud in the inducement does not open the door to admit parol evidence. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 498 (2004). Defendants allege that the purchase and sale agreements attached to the Complaint as Exhibit A and C (the "Integration Clauses") each provides that the "Agreement constitutes the complete agreement between the parties regarding the purchase and sale of the Properties." ECF Nos. 40-1, 40-3.

Under Rule 9(b), a plaintiff alleging fraud must state its circumstances with enough particularity to put each defendant "on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004)) (internal quotation marks omitted). A plaintiff meets that burden by pleading "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* at 200 (citing *Lum*, 361 F.3d at 224).

Defendants are correct that the allegations that speak to Count V, like the Complaint's other fraud allegations, attribute most representations to "Defendants" collectively. The Complaint identifies no statement made by Defendant Sunthang, Defendant Levi Sap Nei Thang Holding Company, LLC, Defendant Levi Sap Nei Thang, LLC (of Wyoming), or Defendant Levi Sap Nei Thang, LLC (of New Mexico), and does not advise who spoke on behalf of any of

those corporate entities. As such, Count V cannot proceed against those four Defendants, as it does not satisfy Rule 9(b).

However, regarding Defendant Thang, the Complaint alleges that, beginning around June 2020, she personally used social media, speaking in Burmese, to advertise her and her team's experience in oil and gas development and production, despite her team's lack of such experience. Plaintiffs also allege that on September 19, 2020, in a text message exchange, Defendant Thang sent Plaintiffs the purchase and sale agreement in Exhibit C and represented that the New Mexico lease was a gift and that she was giving it to them at a drastically discounted price after it had been purchased for $150,000. That lease had actually been acquired for a little over $10,000. Plaintiffs, on those representations from Defendant Thang, agreed to allocate $60,000 of their investment for the purchase and filled out the paperwork sent. While the Complaint does claim that Defendants broadly claimed that the property was obtained for $150,000, Plaintiffs place Defendant Thang at the center of that conversation in the same paragraph, and the reasonable inference at this stage is that she conveyed it. The allegations here respecting Defendant Thang identify the speaker, the medium, the time, the content of the statement, and the reason they are false, which satisfies Rule 9(b)'s demands.

Because Count V survives Rule 9(b) as to Defendant Thang, the Court addresses the Integration Clauses argument as to her alone. The wording of the Integration Clauses is of the kind *Yocca* described, and therefore does bar a fraud in the inducement claim resting on earlier representations about the purchase and sale of the leases the agreements cover. However, Count V does not rest entirely on representations "regarding the purchase and sale of the Properties." Defendant Thang's representations about her and her team's expertise in oil and gas

development were part of what induced Plaintiffs to invest. The Integration Clauses do not exclude those representations from laying the groundwork for the Fraud in the Inducement claim.

Accordingly, as to Count V, the Court will grant the Motion as to all Defendants except Defendant Thang.

**F. Count VI – Fraud in the Execution**

Defendants move to dismiss the Fraud in the Execution claim, arguing that the Complaint does not allege that the terms of any written contracts were switched or fraudulently misstated at signing. Plaintiffs' response respecting Count VI speaks only to the question of whether the Fraud in the Execution claim satisfied Rule 9(b), Defendants do not argue that Count VI fails to satisfy Rule 9(b).

Under Pennsylvania law, a fraud in the execution occurs "when the agreement that is signed is radically different from what the defrauded party was led to believe it was signing." *IBEW Loc. Union No. 102 v. Quality Elec. & Data, Inc.*, 488 F. App'x 603, 606 (3d Cir. 2012) (citing *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir.1994) ("[T]he distinction between fraud in the inducement and fraud in the execution is that, 'the former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is.")). In other words, fraud in the execution is when a defendant represents that a contract contains terms other than those it actually contains, and the plaintiff reasonably relies on the representations at signing. Fraud in the execution is not when a defendant fails to perform what a correctly understood contract promises.

The Complaint alleges that Defendants misrepresented what property rights Plaintiffs had purchased, what the leases were worth, and whether the properties would prove profitable. None

of those allegations is that a signed writing said something other than what Plaintiffs understood it to say. The allegation that the parties contracted for the North Dakota lease only for Plaintiffs to later receive documents for a different lease speak to a failure to perform the executed agreement, which is the province of a contract claim, not a fraud in the execution claim.

Accordingly, as to Count VI, the Count will grant the Motion.

**G. Count VII – Intentional Misrepresentation**

Defendants move to dismiss the Intentional Misrepresentation claim, arguing that it fails to plead fraud with the particularity required under Rule 9(b).

To state a claim for intentional misrepresentation, a plaintiff must allege facts showing "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994). Because the claim alleges fraud, it must satisfy Rule 9(b). Count VII relies upon the same factual allegations as Count V, and the analysis respecting that claim *supra* applies here in full. The Complaint pleads particular misrepresentations by Defendant Thang but not by the other Defendants. Accordingly, as to Count VII, the Court will grant the Motion as to all Defendants except Defendant Thang.

**H. Count VIII – Negligent Misrepresentation**

Defendants move to dismiss the Negligent Misrepresentation claim, arguing that Count VIII has the same Rule 9(b) particularity defect.

To state a claim for negligent misrepresentation, a plaintiff must allege facts showing "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter

ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Associates, Architects and Engineers, Inc.*, 119 A.3d 1070, 1076 (Pa.Super. 2015) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)).

Whether Rule 9(b) governs a claim that does not require scienter depends on whether the factual averments supporting the claim sound in fraud. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006). The *In re Suprema* court held that when multiple claims pled in separate counts of a complaint all allege fraud, they "do not sound in fraud if ordinary negligence is expressly pled in connection with those claims." *Id.* at 272. There, the complaint stated that each such claim "is not based on and does not sound in fraud" and rested instead on "the defendants' negligence in failing to recognize" the misrepresentations and omissions at issue, and Rule 9(b) did not apply. *Id.* at 271. However, when claims rely on theories of intentional deception, the Third Circuit Court applies Rule 9(b). In *Travelers v. Cephalon*, the court held that the plaintiff's broad theory that the defendant fraudulently misled doctors about the defendant's medications sounded in fraud, and therefore all the claims that rest on that broad theory "must be pled with sufficient particularity under Rule 9(b)." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n. 3 (3d Cir. 2015).

Count VIII falls under *Travelers* and not *In re Suprema*, and therefore Rule 9(b) applies here. After listing the representations upon which the Negligent Misrepresentation claims rests, which overlap with the factual allegations in the intentional fraud claims, the Complaint alleges that "Defendants knew or should have known that each of the above representations were not true." ECF No. 40 ¶ 233. That assertion does not disclaim fraud. It pleads knowing falsity and

negligence in the same breath, and it adds no factual allegations of negligence. The facts that follow the "should have known" allegation describe deliberate deception. They assert that Defendants' "subsequent dealings revealed an entirely separate *strategy* centered around the sale of previously-owned leases to investors at grossly *inflated* [prices]," and that Defendants used investor funds "to purchase even more leases and *perpetuate this fraudulent scheme*." *Id.* (emphasis added). As such, Count VIII sounds in fraud and is subject to Rule 9(b), and fails to satisfy it as to all Defendants except Defendant Thang, for the same reasons the Court addressed *supra*.

Accordingly, as to Count VIII, the Court will grant the Motion as to all Defendants except Defendant Thang.

### I. Count IX – Breach of Written, Oral, and Implied Contract

Defendants move to dismiss the Breach of Written, Oral, and Implied Contract claim as to all Defendants except Levi Sap Nei Thang, LLC (the only Defendant named on the written agreements attached to the Complaint), arguing that Plaintiffs never allege which Defendants agreed to what. Defendants do not identify which Levi Sap Nei Thang, LLC they mean to exclude. Plaintiffs respond that the Complaint, read as a whole, identifies the written, oral, and implied-in-fact contracts, the Defendants who entered into them, and their appropriate dates, that Defendant Thang and Levi Sap Nei Thang, LLC executed the agreement at Exhibit C, and that Count IX is pled with the particularity Rule 9(b) requires.

Under Pennsylvania law, to state a breach of contract claim, a plaintiff must allege facts showing "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 3992960, at *6 (M.D. Pa. Sept. 4, 2012) (quoting *Alpart v. Gen. Land*

*Partners, Inc.*, 574 F.Supp. 2d 491, 502 (E.D.Pa.2008)) (internal quotation marks omitted). "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." *Perlberger L. Assocs., P.C. v. Wells Fargo Bank, N.A.*, 552 F. Supp. 3d 490, 498 (E.D. Pa. 2021) (quoting *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015)) (internal quotation marks omitted). "[A] person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract." *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. Ct. 1997) (citing *In the Matter of the Est. of Barilla*, 369 Pa.Super. 213, 219, 535 A.2d 125, 128 (1987)).

As to Defendant Sunthang, Defendant Levi Sap Nei Thang, LLC (Wyoming), and Defendant Levi Sap Nei Thang Holding Company, LLC, the Motion is well taken. None is alleged to be a party to either purchase and sale agreement. Without specifying which Defendant made which promise, Count IX alleges that Plaintiffs and Defendants contracted in three capacities: (1) written contracts for the transfer of oil and gas interest, (2) oral, written, and implied-in-fact contracts under which Defendants were to procure leases for valuable properties at cost in exchange for Plaintiffs' agreement to use Defendants' production services, and (3) a contract for Defendants to provide consulting services. The one allegation that mentions Defendant Sunthang in connection with the promised development and consulting services is that Defendants advertised that he would help develop leased properties once purchased. This describes a representation to prospective buyers generally, not an agreement between Defendant Sunthang and Plaintiffs. Additionally, Plaintiffs' meeting with Defendant Sunthang and Defendant Thang in New Mexico produced no contract. Nothing in the Complaint alleges that Plaintiffs paid Defendant Sunthang, Defendant Levi Sap Nei Thang, LLC (Wyoming), or

Defendant Levi Sap Nei Thang Holding Company, LLC, or that any of them made any promises in return.

Count IX's second theory is a contract under which Defendants were to procure oil and gas leases and offer them at cost to Plaintiffs. Plaintiffs allege that on July 6, 2020, Defendant Thang insisted that $85,000 was the government's highest bidding price for the Texas lease, that the next day Plaintiffs wired $85,000 to Defendant Thang to purchase the lease, that the Texas lease was never purchased, and that only $25,000 was returned. These allegations identify the parties, the subject, the price, and the breach of an agreement made with Defendant Thang herself.

To the extent that Count IX rests on the fact that Defendant Thang signed the agreement in Exhibit C, the argument fails. The Complaint does not allege that Defendant Thang was a party to that agreement, which is an agreement between Plaintiffs and Defendant Levi Sap Nei Thang, LLC (New Mexico). Defendant Thang merely signed it as the corporate representative, not in her own capacity. "[A]n authorized agent for a disclosed principal is not liable on a contract between the principal and a third party unless the agent agrees with the third party to be liable." *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 373 (1968).

Accordingly, as to Count IX, the Court will grant the Motion as to all Defendants except Defendant Thang and Defendant Levi Sap Nei Thang, LLC (New Mexico).

**J. Count X – Unjust Enrichment**

Defendants move to dismiss the Unjust Enrichment claim, arguing that Plaintiffs have failed to allege facts showing how each Defendant individually received, appreciated, and retained benefit from Plaintiffs.

"Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred." Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 667 (Pa.Super. 2007). "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507 (Pa.Super. 2003) (quoting *AmeriPro Search Inc. v. Fleming Steel Co.*, 787 A.2d 988 (Pa.Super. 2001)) (internal quotation marks omitted). A third party that receives a benefit from a contract between others is not unjustly enriched unless it requested the benefit or mislead the parties. *D.A. Hill Co. v. Clevetrust Realty Invs.*, 524 Pa. 425, 434 (1990).

As to most Defendants, the Complaint does not meet that standard. As to Defendants collectively, Plaintiffs allege that they sent a $10,000 payment to Defendants for the Wyoming lease, but none of them individually is alleges to have received it or any part of it.

As to Defendant Thang, the Complaint alleges that Plaintiffs wired $85,000 to her for a Texas lease that they never received and that only $25,000 of it was returned. That pleads a benefit conferred directly to Defendant Thang, her acceptance and retention of it, and circumstances that make her retention of the balance inequitable.

Accordingly, as to Count X, the Court will grant the Motion as to all Defendants except Defendant Thang.

**K. Count XII – Permanent Injunctive Relief**

Count XII seeks permanent injunctive relief against Defendant Thang only, barring her from further disseminating her June 2025 social media post and requiring her to withdraw it from

publicly available sources. Defendant Thang moves to dismiss the claim for Permanent Injunctive Relief, and Plaintiffs do not respond to the Motion as to Count XII.

"[T]he Pennsylvania Constitution [prohibits] a judge from enjoining future libelous speech." *Kramer v. Thompson*, 947 F.2d 666, 670 (3d Cir. 1991); *see also Oberholzer v. Galapo*, 322 A.3d 153 (Pa. 2024). Thus, this Court cannot provide the relief Plaintiff seeks. Accordingly, as to Count XII, the Court will grant the Motion.

**L. Count XIII – Declaratory Judgment**

Defendants move to dismiss the claim for Declaratory Relief, which asks for a declaration that the purchase and sale agreements are invalid for lack of execution, arguing that Pennsylvania law does not require contracts to be signed in order to be enforceable. Plaintiffs respond that the agreements were never consummated, because Defendants sent documents for a different North Dakota lease and never transferred either lease to Plaintiffs. They also contend that enforceability of an agreement is not proper grounds for dismissal.

"Under Pennsylvania law, an agreement can be effective even in the absence of a signature." *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 313 (E.D. Pa. 2020). "Where the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement . . . [and] signatures are not required unless such signing is expressly required by law or by the intent of the parties." *Com. Bank/Pennsylvania v. First Union Nat. Bank*, 2006 PA Super 305, 911 A.2d 133, 145 (2006) (quoting *Mazzella v. Koken*, 559 Pa. 216, 739 A.2d 531, 536–37 (1999); *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 739 A.2d 133, 136 (1999)). Instead, acceptance of a contract may be manifested by one's course of

dealings with the other party. *Accu-Weather, Inc. v. Thomas Broad. Co.*, 425 Pa. Super. 335, 342 (1993) (internal quotation marks omitted).

As used in the Complaint, the word "executed" means signed. Plaintiffs allege that the North Dakota lease purchase and sale agreement was executed on or about August 31, 2020 and that on or about October 6, 2020 they retuned the executed paperwork for the New Mexico lease. Plaintiffs' Response Brief reads "executed" to mean "performed," and argues that Defendants never delivered the leases they sold. Unfortunately for Plaintiff's argument, Count XIII does not plead that theory. But even on Plaintiffs' reading, sending documents for the wrong lease and never transferring the leases speaks to breach, not invalidity or failure to execute.

Accordingly, as to the claim for a Declaratory Judgment, the Court will grant the Motion.

**M. Count XIV – Rescission**

Defendants move to dismiss the claim for Recission, arguing that recission is a remedy for fraud rather than a freestanding cause of action. Plaintiffs respond that they pleaded Recission in the alternative to Declaratory Judgment, and offer to either amend the Complaint to seek recission as a remedy or stipulate that they seek it as one.

"Under Pennsylvania law, a defrauded party may pursue several remedies including an action of damages for deceit, recission and restitution based on fraud, and reformation of the contract for fraud." *Moffatt Enters., Inc. v. Borden Inc.*, 807 F.2d 1169, 1174 (3d Cir. 1986). In other words, recission is a remedy, not a cause of action. Count XIV asks that if the Court finds the purchase and sale agreements enforceable, it should rescind them due to the frauds Defendants committed. That is a request for a remedy, but it is framed as a cause of action.

Accordingly, as to the claim for a Recission, the Court will grant the Motion.

## IV. Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motions to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*_______
Robert J. Colville
United States District Judge

DATED: September 29, 2026

cc: All counsel of record,